**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| GIRL SCOUTS OF THE USA, | : | |
| | : | Civil Action No. _____ |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FARTHEST NORTH GIRL SCOUT COUNCIL, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Girl Scouts of the USA ("GSUSA") files this suit against Defendant Farthest North Girl Scout Council ("Farthest North"), and alleges:

### SUMMARY OF THE ACTION

1.     In 1912, Juliette Gordon Low founded the Girl Scouts in the United States, an organization that has now served millions of girls across the nation and world with premier leadership and character-building programming. The organization was subsequently incorporated in 1915 and over time, the Girl Scout Movement ("Movement") grew to include multiple Girl Scout troops and councils, culminating in the U.S. Congress chartering Girl Scouts of the USA by statute in 1950. *See* 36 U.S.C.A. § 80301 *et seq.* (the "Act"). Since 1950, GSUSA has grown to be an organization with over two million members globally each year focused on building girls of courage, confidence, and character who make the world a better place (the "Mission"). Members

from across the country pay dues that are transmitted to GSUSA in New York in order to become members of the Girl Scout Movement and to participate in its girl-led, girl-serving programming.

2.    GSUSA has the exclusive right to use the Girl Scout mark and all emblems, badges, descriptive or designating marks, and words or phrases, adopted by GSUSA, including the Girl Scout badge, and to authorize their use.  The United States Patent and Trademark Office ("USPTO") has recognized the congressional protections afforded to GSUSA that grant it the exclusive right to use and register the Girl Scout mark in every class of goods and services recognized by the USPTO.

3.    GSUSA authorizes organizations known as local councils in different geographic territories to accomplish its Mission.  Local councils are granted permission to be associated with GSUSA and the Girl Scout Movement through charters—*i.e.*, a binding contract between the GSUSA and each local council.

4.    A charter grants a local council the right to develop, manage, and maintain Girl Scouting in a specific geographic jurisdiction and conveys the rights to:  (1) be identified with the Girl Scout Movement in the United States; (2) use the words "Girl Scouts" as part of the designation of the council; (3) use Girl Scout insignia in connection with its Girl Scouting program; (4) use the trademark "Girl Scouts" on products and merchandise used for the operations of the organization; (5) develop, manage, and maintain Girl Scouting throughout the jurisdiction of the council; and (6) receive services from GSUSA, among other rights.

5.    In exchange, each local council agrees to act in furtherance of the Mission by, among other things:  (a) subscribing to the purpose, adhering to the policies, and being guided by the standards of the GSUSA; (b) developing, managing, and maintaining Girl Scouting throughout the areas of its jurisdiction, in such manner and subject to such limitations as prescribed in the

Constitution, Bylaws, and policies of GSUSA;[1] (c) maximizing delivery of the Girl Scout Mission by engaging and supporting volunteers and others to provide a nationally consistent quality leadership experience that achieves positive outcomes and reaches increasing numbers of girls; and (d) advancing the Girl Scout Movement through strategic governance and leadership that employ effective systems and structures to deliver the Mission, and effectively promoting a unified and consistent national brand. The conditions for a Girl Scout council charter require that councils must operate in accordance with and follow the policies and standards published by GSUSA from time to time.

6. In April 2017, after extensive collaboration with local councils across the country, GSUSA amended the Blue Book criteria and standards for a Girl Scout council to require all local councils to "utilize a movement-wide common technology platform with respect to membership, volunteer management, delivery systems and data analytics and reporting to better serve Girl Scout volunteers and members and enhance the Girl Scout brand." *See* Exhibit A (Blue Book, Criteria and Standards for an Effective Girl Scout Council, Criteria II, Standard 7).

7. A common technology platform for all local councils is critical to fulfilling GSUSA's Mission. Among other things, it enables GSUSA to streamline operations, ensure the consistent delivery of experiences to girls and volunteers, enable modern digital capabilities and ensure quality control over the Girl Scout brand. Through the common technology platform, Girl Scout volunteers, members, and parents can access information pertaining to their Girl Scout experience in a convenient and consistent manner; volunteers can access a Volunteer Toolkit and online learning platform that assist with troop resources, training materials, and free digital

---

[1] GSUSA's governing documents and policies are published in a compilation known as the Blue Book of Basic Documents ("Blue Book"). *See* Exhibit A.

program content at any time convenient to the volunteer; prospective members can register online; and GSUSA can have one centralized platform from which to receive data, reducing data processing fees and challenges associated with managing the Girl Scout brand across the country. This common technology platform is a critical part of ensuring the consistent and uniform worldwide operation of the vast Girl Scout network in conformity with its Mission. It is also critical to protecting GSUSA's members and volunteers. The common technology platform has enhanced data security tools that ensure the protection of personal identifiable information for its members and volunteers, most of whom are minors.

8. To date, almost every one of GSUSA's 111 local councils, as well as USA Girl Scouts Overseas, uses GSUSA's common technology platform.[2]

9. Despite every opportunity to do so, Farthest North refuses to implement the common technology platform as required by its Charter and the Blue Book. Additionally, Farthest North has also engaged in a repeated practice of failing to comply with various other Charter and Blue Book obligations.

10. Starting in 2017, GSUSA has taken great efforts to encourage Farthest North to comply with its Charter by implementing the common technology platform. GSUSA offered logistical and financial assistance to Farthest North—offering to cover all initial on-boarding costs, to reduce annual costs of the platform, and to reduce the number of features and licenses Farthest North would have to adopt to account for any unique circumstances of Farthest North. Despite these offers and its charter obligations, Farthest North adopted a board resolution specifically repudiating and refusing to adopt the common technology platform. GSUSA conducted various

---

[2] The only other local council that is not in compliance with this obligation is currently undergoing a Viability Review to endeavor to migrate the council to the common technology platform, similar to the process that was undertaken with Farthest North.

4

reviews of Farthest North's performance as a council, had telephonic and in-person meetings, issued findings, and developed a corrective action plan, all of which were eschewed by Farthest North.

11.     In addition to refusing to use the common technology platform, Farthest North has also repeatedly failed to act in the best interest of Girl Scouting by, among other things, refusing to implement required national Girl Scout programming and brand materials, disincentivizing national members from providing feedback on the Girl Scout experience through a customer survey, refusing to pay for processing its membership information through an alternative means because it has rejected the common technology platform, knowingly and purposely placing a national partnership for cookie booth sales in jeopardy, participating in an unauthorized online cookie sale that violates GSUSA policies, and refusing to provide business and financial documents as required by the Blue Book. These deficiencies hinder GSUSA's ability to ensure compliance with its Mission, jeopardize its brand and reputation, and present potential liability issues.

12.     Farthest North's current Charter expires on June 30, 2021. Due to Farthest North's continuing breaches of its charter obligations and other obligations under the Blue Book, its failure to abide by the Criteria and Standards for an Effective Girl Scout Council, refusal to comply with the corrective action plan directed by GSUSA, and its course of conduct not in the best interest of Girl Scouting, GSUSA does not intend to issue Farthest North a new charter after June 30, 2021. GSUSA has provided Farthest North with a notice of reason for non-issuance, as required by the Blue Book.

13.     Farthest North has indicated that it objects to and will challenge the expiration of its Charter and GSUSA's decision not to re-issue it and that it does not intend to implement the

5

common technology platform or otherwise comply with the corrective action plan that was provided to it.

14. GSUSA brings this action under the Declaratory Judgment Act, 28 US Code § 2201 *et seq.*, and Federal Rule of Civil Procedure 57, to obtain relief from uncertainty and to fully and finally confirm in response to Farthest North's challenges and open recalcitrance that GSUSA is within its legal and contractual rights in not issuing Farthest North a Charter and to avoid the accrual of potential damages or liability as a result of non-issuance of Farthest North's Charter.

15. Accordingly, GSUSA seeks a declaration that (1) Farthest North has breached its obligations as a local council under its Charter and the Blue Book by refusing to utilize GSUSA's common technology platform, engaging in conduct not in the best interest of Girl Scouting, refusing to comply with policies, credential standards, and directives issued by GSUSA, and/or refusing to comply with the Viability Review corrective action plan; (2) GSUSA has the right not to issue a Charter to Farthest North and Farthest North's challenges thereto are without merit; and (3) upon the expiration of its current Charter, Farthest North will no longer be a chartered Girl Scout council and must cease identifying itself with the Girl Scout Movement, including by ceasing to use the words "Girl Scouts" as part of the designation of the council, ceasing to use Girl Scout program material, insignia, or Girl Scout trademarks, and ceasing fundraising in association with the Girl Scouts or GSUSA.

## PARTIES

16. Plaintiff GSUSA is a congressionally chartered nonprofit corporation that is a body corporate and politic of the District of Columbia, with its principal place of business located at 420 Fifth Avenue, New York, NY 10018. GSUSA's congressional Charter provides that "the domicile of [GSUSA] is the District of Columbia." *See* 36 U.S.C. § 80301(b).

17.     Defendant Farthest North is a nonprofit corporation organized in the State of Alaska with a principal place of business located at 431 Old Steese Hwy Ste 100, Fairbanks, AK 99701.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over GSUSA's claims pursuant to 28 U.S.C. §§ 1332 and 2201 because (a) there is an actual controversy between the parties; (b) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (c) there is complete diversity between parties as the matter is between citizens of different states.

19.     There is actual controversy between the parties as there is a current dispute between the parties about GSUSA's decisions regarding Farthest North's charter.  Farthest North has refused to comply with its charter obligations and GSUSA's policies, procedures and directives and has protested (and continues to protest) joining GSUSA's required common technology platform and remedying its additional deficiencies.  As recently as February 5, 2021, Farthest North reiterated in writing to GSUSA that it has not changed its positions concerning the items required by GSUSA to fulfill its charter obligations.  A declaration by the Court will serve a useful purpose in clarifying or settling the legal issues involved, will finalize the controversy and offer relief from uncertainty, and will help avoid the accrual of potential damages and additional litigation.

20.     In actions brought under the Declaratory Judgment Act, the amount in controversy for diversity jurisdiction purposes is calculated by the "value of the object of the litigation"—*i.e.*, the value of the right being protected.  Here, the amount in controversy exceeds $75,000 because GSUSA seeks to:  (1) protect the Girl Scout brand (alone valued in excess of $600 million), its goodwill, and its intellectual property—which Farthest North will no longer be permitted to use in the event of non-issuance—the value of which exceeds $75,000; (2) protect the value of the

7

common technology platform, including but not limited to the benefits it provides GSUSA as a national organization, the value of which exceeds $75,000; (3) protect the investments that GSUSA has made in its common technology platform, the value of which exceeds $75,000; (4) avoid the additional costs associated with Farthest North's continued refusal to use the common technology platform, including but not limited to costs of processing Farthest North's membership transmittal data through an alternative means, and the legal, financial, and other resources needed to work through charter issues with Farthest North, the combined value of which exceeds $75,000; and (5) prevent costly litigation and potential liability involving claims by Farthest North, the value of which exceeds $75,000.

21.     There is complete diversity between parties as the matter is between citizens of different states.  Farthest North is a citizen of Alaska, and GSUSA is domiciled in the District of Columbia with its principal place of business in New York.

22.     Pursuant to N.Y. CPLR 302(a)(1), personal jurisdiction over Farthest North is proper in this case, because, among other reasons, Farthest North: (1) has an ongoing contractual relationship with GSUSA, which is headquartered within New York, in this Judicial District, creating continuing obligations between itself and GSUSA; (2) is required to adhere to the Girl Scouts Constitution, Bylaws, and policies administered by GSUSA in New York; (3) routinely sends charter applications and filings to GSUSA in New York and makes payments sent to, accounted for and deposited in New York, (4) routinely collects and sends membership dues for GSUSA's members which are sent to, accounted for and deposited in New York through GSUSA's office in New York (5) was subject to a Viability Review directed and overseen by GSUSA in New York, to which the current dispute relates; (6) receives, pursuant to the Charter agreement, numerous services from GSUSA in New York, including but not limited to educational

programing, training and support materials for Farthest North's volunteers, and services and support to Farthest North that help it deliver programing to its members; and (7) sent its CEO to New York in at least 2019 to meet with GSUSA and other local councils regarding how to effectively administer Girl Scouts programming including the programming directly at issue in this action.

23.     Venue is proper in this jurisdiction because a substantial part of the events giving rise to this action occurred, or a substantial part of the property that is the subject of the action is situated, in New York.  Namely, GSUSA administers Farthest North's Charter agreement, as well as all Charter agreements, and all national policies from New York, in this Judicial District, which allows Farthest North the right to use Girl Scout insignia and trademarks, among other rights.

## FACTUAL BASIS OF THE CLAIM

### GSUSA and Girl Scouting Mission

24.     In 1912 Juliette Gordon Low founded the Girl Scouts in the United States based on the theories of inclusiveness, self-reliance, and service.

25.     The organization was first incorporated in 1915 and over time, the Movement grew to include multiple local Girl Scout councils, culminating in the U.S. Congress chartering the GSUSA in 1950.

26.     Since 1950, the Girl Scouts have grown to be an organization with over 110 local councils and about two million members globally focused on building girls of courage, confidence, and character who make the world a better place.

27.     GSUSA's Girl Scout program seeks to prepare girls for a lifetime of leadership, success, and adventure through engaging, challenging, and fun activities, including but not limited to earning badges, going on trips, participating in the Girl Scout Cookie Program, experiencing

9

outdoor activities, exploring STEM subjects, achieving their Gold Award, and doing community service projects.

28.     In connection with its Mission, GSUSA has continuously used and maintained multiple highly valuable registered trademarks, including but not limited to federally registered trademarks for the term: "GIRL SCOUTS", the trefoil mark, and logos **Girl Scouts**,  . Additionally, 36 U.S.C. § 80305 specifically codifies that GSUSA has the exclusive right to use all emblems, badges, marks, and words adopted by the corporation during the life of the corporation in connection with the manufacture, advertisement, and sale of equipment and merchandise.

29.     The Girl Scout intellectual property is well known throughout the United States and has valuable goodwill as recognized by various trade publications and third-party reports and rankings that measure brand values.  Its trademarks are globally recognized and famous and are valued in the millions of dollars.

30.     GSUSA has also been recognized and honored by U.S. Presidents throughout history, including President George H.W. Bush, and President Barack Obama, who awarded the Presidential Medal of Freedom to Juliette Gordon Low posthumously for her work in founding the Girl Scouts.

31.     Pursuant to its congressional Charter, GSUSA directs and coordinates the Girl Scout Movement in the United States and its territories and possessions, and fixes and maintains standards for the Girl Scout Movement.

32.     GSUSA authorizes organizations known as local councils in different geographic territories to accomplish its Mission.

10

33.     Local councils are separately incorporated chartered organizations that GSUSA authorizes to use the Girl Scout name and mark and to carry out the Girl Scout program locally. Local councils are authorized to develop, manage, and maintain Girl Scouting in accordance with the terms of their Charters.

34.     Each charter constitutes a binding contract between the local council (such as Farthest North) and GSUSA.

35.     Girl Scout local councils are obligated to adhere to the national policies, standards and directives contained in the Blue Book.

36.     In furtherance of the Girl Scouts' uniform and consistent Mission, through its charter, each local council agrees to the following, among other things:

   a. Subscribe to the purpose, adhere to the policies, and be guided by the charter criteria and standards of GSUSA.

   b. Develop, manage, and maintain Girl Scouting throughout the area of its jurisdiction, in such manner and subject to such limitations as prescribed in the Constitution, Bylaws, and policies of GSUSA.

   c. Participate in the activities and business of GSUSA.

   d. Provide periodic documents to GSUSA, including annual financial audits and Form 990 and board minutes.

   e. Participate in an annual review process with GSUSA and implement any agreed upon follow-up.

37. Each local council also agrees to the following charter criteria:

   a. To maximize the delivery of the Girl Scout mission by engaging and supporting volunteers and others to provide a nationally consistent, quality leadership

11

experience that achieves positive girl outcomes and reaches increasing numbers of girls;

b. To advance the Girl Scout Movement through strategic governance and leadership that employ effective systems and structures to deliver the Girl Scout Mission; and

c. To advance organizational impact by growing resources, effectively promoting a unified national brand, and standing up for girls on issues that affect their well-being.

38. In each charter, including Farthest North's Charter, local councils understand and agree, among other things, that:

a. In carrying out the terms and other obligations of the charter, they will act in accordance with the Constitution and Bylaws of GSUSA and that the rights and responsibilities granted in the charter are limited by the aforesaid Constitution and Bylaws;

b. By agreeing to adhere to the policies of GSUSA, they understand and agree to operate as a council in accordance with and to be limited by policies so identified, published, and distributed to councils by GSUSA, accepting them as binding on the council, on all its members, officers, employees, and those affiliating with it; and

c. By agreeing to be guided by the standards of GSUSA, they understand that as councils they have committed themselves and those affiliating with them to follow and be guided by the standards published from time to time by GSUSA.

39. One of these standards is the obligation to use the GSUSA common technology platform. Each charter, including Farthest North's Charter, requires the local council to "utilize[] a movement-wide common technology platform with respect to membership, volunteer

12

management, delivery systems and data analytics and reporting to better serve Girl Scout volunteers and members and to enhance the Girl Scout brand." *See* Exhibit A, at \*29 (Standard 7, Criterion II, of Criteria and Standards for an Effective Girl Scout Council).

40.     Implementation and use of the common technology platform are critical to fulfillment of the Mission because, among other things, it assists with delivering Girl Scouting services to volunteers and members, provides greater tools to Girl Scout volunteers, and provides better, consistent, coordinated and uniform delivery systems, data analytics, and reporting. Additionally, the common technology platform provides the Volunteer Toolkit to support troop leaders by making program resources and training available to members irrespective of geographic location. The Volunteer Toolkit allows volunteers to access more troop resources, training materials, and free digital program content at any time convenient to the volunteer. It enables GSUSA to deliver nationally consistent and uniform girl programming and volunteer training tools. It also protects the Girl Scouts intellectual property by ensuring that Girl Scout materials are accessible only to authorized individuals and are used in a manner consistent with authorized uses thereof.

41.     The common technology platform is also vital to the Mission as it allows GSUSA to streamline operations among local councils nationwide to ensure a consistent brand experience for Girl Scout members throughout the United States. The common technology platform provides GSUSA with real-time data and information concerning the business operations of Girl Scouts, including data and information on membership, financials, local councils, and compliance requirements, to ensure that GSUSA is effectively managing the nationwide organization. It is an essential tool for any modern national organization in today's world and is critical to GSUSA's

13

fulfillment of its Mission through the consistent and uniform treatment and administrative handling of its chartered councils and of Girl Scout members throughout the country.

42.     The common technology platform, maintained through sophisticated national top tier vendors, ensures compliance with privacy laws and provides enhanced security for member and volunteer data.  The platform, which is compliant with Payment Card Industry Data Security Standards (PCI compliant), protects member and volunteer personal identifiable information as well as sensitive payment information through its multifactor authentication tools and other data security features.  These features are important for any national organization that possesses personal or payment information—however they are particularly critical for an organization like GSUSA, with a membership made up of mostly minors.  The common technology platform also allows GSUSA to efficiently implement any new state or federal requirements concerning the management of consumer privacy or data as GSUSA can implement system changes which coordinate compliance.  Farthest North's website does not appear to even have a privacy policy.

43.     For these reasons and more, the common technology platform is an essential part of carrying out the Mission.

44.     In exchange for complying with its charter and Blue Book requirements, including each local council's agreement to use the common technology platform, GSUSA grants a local council the right to develop, manage, and maintain Girl Scouting in a specific geographic jurisdiction for up to four years at a time and conveys the rights to:  (1) be identified with the Girl Scout Movement in the United States, (2) use the words "Girl Scouts" as part of the designation of the council; (3) use Girl Scout insignia in connection with its Girl Scouting program; (4) use the trademark "Girl Scouts" on products and merchandise used for the operations of the

14

organization; (5) develop, manage, and maintain Girl Scouting throughout the jurisdiction of the council; and (6) receive services from GSUSA, among other rights.

45.     Under each charter agreement, a council expressly agrees that the charter may be revoked or terminated by GSUSA under the provisions of its Constitution, and that the rights conferred by the charter cease to exist upon such termination or revocation.

46.     Pursuant to the Constitution of GSUSA, "the [GSUSA] National Board of Directors, in its sole discretion, shall have the power to issue … credentials [including council charters] subject to the requirements established by the National Council, and to revoke them when, in its opinion, the terms and conditions thereof or requirements therefore are being violated or when the best interests of Girl Scouting are not being furthered."

### GSUSA Procedures for Reviewing Charters

47.     The Blue Book establishes a procedure for reviewing charters issued to local councils.

48.     As part of that procedure, each council must complete an Annual Review and submit required documents for information to GSUSA for GSUSA to evaluate the council's performance.  Generally, if there are no issues with the council's performance that require additional review and the council meets all GSUSA policies and standards, GSUSA re-issues a council's charter for an additional period, up to four years.  The length of the charter may vary based on the council's performance.

49.     A Viability Review may be initiated by GSUSA if there is evidence or reason to believe that one or more of the following circumstances exist:  (1) action that threatens to undermine the Mission and/or damage the Girl Scout brand, (2) risk of financial failure or failure to meet financial obligations, (3) corporate malfeasance, (4) disregard for Mission-critical GSUSA

15

policies, priorities, and goals or other direction given by the National Board or CEO, (5) governance system in violation of US law, council bylaws, and/or GSUSA policies; and is not consistent, visible, or effective, (6) performance against national benchmarks and council goals continues to be consistently and critically below standard after an On-Site Review has been conducted, or (7) any act or omission, or a course of conduct that, in the opinion of the GSUSA National Board, is not in the best interests of Girl Scouting.

50.     If a Viability Review is initiated, GSUSA advises the council that a review is to take place, an appropriate review team including local and national GSUSA personnel is selected, and the review team prescribes an action plan to the council including findings with the expectation that the council is to take immediate corrective action.

51.     GSUSA then monitors the execution of the prescribed corrective action plan to ensure the council's progress.

52.     Monitoring actions can include monthly meetings with the council, placement of a monitor with the council to provide on-the-ground support, immediate targeted on-site support at the council, and the council providing documentation to GSUSA in a timeframe prescribed.

### GSUSA Procedures for Non-Issuance of Charters

53.     If GSUSA determines a charter should not be issued, or that a charter should be revoked, the Blue Book similarly establishes a procedure.

54.     The GSUSA National Board of Directors can act on the recommendations of the CEO of GSUSA if any of the following circumstances occurs in a council:

> a.  Deficiency in respect to its resources, finances, personnel, administrators, manner of supervising the program, effectiveness in its attempt to reach and serve all girls within its jurisdiction or otherwise, such that, in the opinion of

16

the National Board of Directors, it appears that such council is unable adequately to develop, manage, or maintain Girl Scouting within its jurisdiction; or

b. Any act or omission, or any course of conduct that in the opinion of the National Board of Directors, is not in the best interests of Girl Scouting; or

c. Failure to comply with any policy, credential standard, or directive issued or established by or under the authority of the National Board of Directors; or

d. Violation of any term, condition, or requirement of its charter.

55. If charter revocation or non-issuance is contemplated by GSUSA, notice of reason will be provided to the council along with a reasonable time period for response, and the council can review and discuss the issue(s) with a team representing the National Board.

56. After the meeting with the council, the National Board "will in its sole discretion, take action that it deems appropriate including revocation or non-issuance" of the charter, and will communicate the action to the council. *See* Exhibit A, at \*27 (Credentials, GSUSA Constitution Art. VIIII, Procedures for Non-Issuance or Revocation of Charters No. 3).

57. Once the GSUSA National Board decides to not issue a charter or to revoke a charter, its decision "shall be final" under the Blue Book.

***Farthest North's Failure to Abide by the Viability Report Corrective Action Plan and the Parties' Dispute***

58. For several years, Farthest North has engaged in a pattern of disregarding its contractual Charter and Blue Book obligations and acting in a manner that is not in the best interests of Girl Scouting.

59. In 2017, GSUSA issued Farthest North a one-year Charter for the period of January 2018 through December 31, 2018 ("2018 Charter") in order to provide time for Farthest North to

work together with GSUSA on its Charter deficiencies, including its failure to move toward adoption of the Girl Scouts common technology platform.[3]

60.     The GSUSA Board issued a Charter letter to Farthest North on November 15, 2017 that accompanied its one-year Charter agreement, stating:

> This letter is to inform you that Girl Scouts Farthest North Council (Farthest North) has been issued a one-year charter, beginning January 1, 2018, and ending December 31, 2018.  A one year charter period is intended to provide time for Farthest North to work together with GSUSA to move toward adoption of the Girl Scouts common technology platform through the Customer Engagement Initiative (CEI), as almost every other council has done.  Criterion II Standard 7 found on page 33 of the Blue Book of Basic Documents (2017) provides that a council must utilize "a movement-wide common technology platform with respect to membership, volunteer management, delivery systems and data analytics and reporting to better serve Girl Scout volunteers and members and enhance the Girl Scout brand."  Farthest North has not consistently participated in the activities and business of Girl Scouts and has not advanced the Movement through strategic governance and leadership; the council's current refusal to join CEI is consistent with this pattern.
>
> GSUSA has made significant efforts to work with Farthest North toward engagement in the business of Girl Scouts and the advancement of the Movement through effective leadership.  GSUSA has also worked with Farthest North on adoption of the Movement's common technology platform, an essential element to an effective Girl Scouts' Movement and preservation of the Movement's long-developed reputation for integrity and uniform quality, that was recommended by the Network Alignment Team.   There have been several Movement-wide presentations and extensive information on CEI that has been disseminated over the past 3 years.  GSUSA has also worked directly with Farthest North, including dialogue with the Farthest North CEO to answer questions and provide data and information regarding CEI.

61.     Farthest North voiced disagreement with GSUSA's position but signed its Charter agreement and accepted the one-year Charter for 2018.

62.     During 2018, Farthest North refused to implement and utilize the common technology platform.

---

[3] GSUSA's common technology platform has also been referred to as "CEI" as it was implemented as part of an organizational initiative known as the Customer Engagement Initiative.

18

63.     Given the importance of the common technology platform, GSUSA and Farthest North had multiple conversations since at least 2018 concerning how GSUSA could assist and accommodate Farthest North in adopting the technology platform. GSUSA offered to cover all initial on-boarding costs, reduce annual costs of the platform, and reduce the number of features and licenses Farthest North would have to adopt to account for any unique circumstances of Farthest North.

64.     Despite GSUSA's offers of assistance, Farthest North refused to adopt the common technology platform, and on June 11, 2018 adopted a Board resolution expressly repudiating and resolving not to adopt the platform.

65.     Refusal to join the common technology platform is part of a broader pattern of Farthest North's failure to consistently participate in the activities and business of Girl Scouts and advance the Girl Scout Movement through strategic governance and leadership.

66.     In October 23, 2018, because Farthest North continued to be noncompliant, it was again given a one-year Charter for 2019, and a Viability Review was commenced. GSUSA continued to detail the deficiencies of the council, stating:

> As GSUSA has raised with Farthest North multiple times, Farthest North has not complied with Criterion II, Standard 7 of the Criteria and Standards for an Effective Girl Scout Council, as it has not adopted or committed to adopt the Customer Engagement Initiative (CEI), the required movement-wide common technology platform with respect to membership, volunteer management, delivery systems, and data analytics and reporting that better serves volunteers and members and enhances the Girl Scout brand. CEI grew out of the interactive Girl Scout CEO/COO Summit in 2013, was built out collaboratively since that time, and is part of the operating model recommended by the joint council/GSUSA Network Alignment Team. CEI is essential to an effective Girl Scout Movement and preservation of the Movement's long-developed reputation for integrity and uniform quality. It is the foundation for Girl Scout membership tracking, future delivery of Girl Scout programming, necessary data analytics, and contemporary business processes. Accordingly, it is one of the standards that the National Board of Directors has adopted that Girl Scout councils must comply with in order to fulfill their charter requirements.

19

Given the importance of CEI, GSUSA and Farthest North have had multiple conversations during the prior charter period and during this charter period about CEI and how GSUSA can assist and accommodate Farthest North in adopting it. GSUSA has sought to accommodate your council's uniquely small size by offering to cover all initial on-boarding costs, substantially reduce annual costs of the platform, and reduce the number of features and licenses your council would need to adopt. We have also held several discussions with you to answer any questions, provide information, and offer assistance and accommodation. Unfortunately, despite these efforts, on June 11, 2018, the Board of Directors of Farthest North adopted a resolution expressly resolving not to adopt CEI.

The refusal to join CEI is part of a broader pattern of Farthest North's failure to consistently participate in the activities and business of Girl Scouts and advance the Movement through strategic governance and leadership. Rather, Farthest North has engaged in a course of conduct over several years that is not in the best interests of Girl Scouting, undermines the Girl Scout mission, and damages the brand. For example, Farthest North has actively disincentivized national members from providing feedback on the Girl Scout experience through the Voice of the Customer survey. Trends in the Voice of the Customer survey also showed concerns about girl and customer satisfaction. Farthest North has refused to pay required membership processing fees to enable GSUSA to receive and process data outside of the CEI systems, despite receiving repeated notices from GSUSA. Farthest North also does not meet the jurisdictional requirements for a Girl Scout council. It has also refused to serve certain regions even within its jurisdiction and denied a request by the adjacent council to serve one of those regions.

67. Again, Farthest North voiced its disagreement but signed its one-year Charter agreement.

68. On May 6, 2019, GSUSA wrote to Farthest North setting forth the scope and process for the Viability Review in accordance with the Blue Book.

69. In 2019, GSUSA conducted a Charter Viability Review of Farthest North.

70. On September 9, 2019, the Viability Review findings and corrective action plan were delivered to Farthest North, which contained, among other things, six central concerns along with the action plan Farthest North was to take in relation to each concern.

20

71. GSUSA then issued Farthest North an additional one-year Charter for the January 1, 2020 through December 31, 2020 term ("2020 Charter") to give Farthest North an opportunity to correct all deficiencies set forth in the corrective action plan dated September 9, 2019.

72. Farthest North voiced its disagreement but executed the 2020 Charter.

73. Over the course of 2020, GSUSA attempted multiple calls and meetings to review Farthest North's progress toward the plan. Farthest North refused to comply with the deadlines and action plan directives.

74. On November 5, 2020, GSUSA provided Farthest North with a Viability Review Action Plan Final Report ("Final Report"), which contained findings and conclusions for each concern identified in the corrective action plan based upon Farthest North's activities during 2020.

75. The Final Report found Farthest North: (1) failed to adopt the movement-wide common technology platform in accordance with the action plan; (2) failed to pay required processing fees to enable GSUSA to receive and process data outside of the common technology platform in accordance with the action plan; (3) failed to transmit full contact information to GSUSA for its members in accordance with the action plan; (4) only partially met the requirements demonstrating it was willing and able to effectively serve its jurisdiction; (5) only partially met the requirements for consistently participating in the activities and business of Girl Scouts; and (6) failed to demonstrate an adequate course of conduct in the best interest of Girl Scouts.

76. Farthest North's deficiencies continued, and it failed or refused to meet the overwhelming majority of the milestones laid out in the Viability Review's corrective action plan. It also refused to provide financial reports and documents required for its Annual Review.

77. In November 2020, GSUSA then issued Farthest North a six-month Charter, which expires on June 30, 2021, to provide Farthest North with a final opportunity to complete the

corrective action plan and to comply with its Charter requirements, including adopting the

common technology platform ("2021 Charter").  *See* Exhibit B (attaching 2021 Charter).

78.     In its November 19, 2021 letter, GSUSA stated:

This letter is to inform you that Girl Scouts Farthest North Council (Farthest North) has been issued a six-month charter, beginning January 1, 2021, and ending June 30, 2021, to provide Farthest North a final opportunity to complete its Corrective Action Plan and to comply with charter requirements. We previously provided you the Viability Review Corrective Action Plan Final Report dated as of October 30, 2020. As the report indicates, Farthest North has failed to meet the great majority of the required steps of the Corrective Action Plan. These failures include Farthest North's active refusal to adopt the CEI platform.

In addition, Farthest North is in violation of its charter requirements. Among other things, Farthest North has refused to provide financial reports and documents required for its Annual Review process. However, in light of the challenges posed by COVID-19, and to give Farthest North one last chance to come into compliance, the GSUSA National Board is issuing Farthest North a six-month charter subject to completion of the chartering process. This six-month charter is granted without waiver of the obligation that Farthest North comply with the Viability Review Corrective Action Plan and all Criteria and Standards for an Effective Girl Scout council, including Criterion II, Standard 7, and GSUSA's right to enforce the Standards for a Girl Scout Council Jurisdiction. GSUSA will continue to require completion of the council health dashboard surveys, participation in the Girl Scout Voices Count surveys and regular submission of the documents listed in the Charter Agreement.

GSUSA is committed to supporting your efforts to deliver on our mission of building girls of courage, confidence and character who make the world a better place. Our hope is that Farthest North will use the six-month charter to take immediate and meaningful steps to complete the Corrective Action Plan and to come into compliance with charter requirements. If that does not occur, GSUSA will take all such steps as it deems appropriate.

79.     As it has done in prior years, Farthest North executed the six-month Charter "under

protest."  By executing the six-month Charter, like the ones that came before it, Farthest North

agreed to, among other things:

a.   Subscribe to the purpose, adhere to the policies, and be guided by the charter

criteria and standards of GSUSA;

22

b. Develop, manage, and maintain Girl Scouting throughout the area of its jurisdiction as prescribed in the Constitution, Bylaws, and policies of GSUSA;

c. Follow and be guided by the standards of GSUSA; and

d. Utilize a movement-wide common technology platform with respect to membership, volunteer management, delivery systems, and data analytics and reporting to better serve Girl Scout volunteers and members and enhance the Girl Scout brand, which is one of the standards set by GSUSA for Girl Scout councils.

80. Despite GSUSA issuing the six-month Charter, Farthest North has not made any progress toward compliance with the Viability Review corrective action plan and continues to refuse to adopt the common technology platform as required.

81. Farthest North has engaged in a course of conduct over several years that is not in the best interests of Girl Scouting, that undermines the Girl Scout Mission, and that damages the Girl Scout brand.

82. In addition to its refusal to implement the common technology platform as required, Farthest North also disincentivized national members from providing feedback on the Girl Scout experience through a survey of national members, failed to participate fully in the Annual Review process, knowingly and purposely placed in jeopardy a national partnership for cookie booth sales for the Girl Scout Cookie Program, and participated in an unauthorized online cookie sale that violates GSUSA policies, among other things. Farthest North has further refused to pay processing fees to enable GSUSA to receive and process membership dues outside of the common technology platform, or to provide complete membership registration information. Farthest North also does not meet the minimum jurisdictional standards for a Girl Scout council.

83. GSUSA has received complaints from Girl Scout volunteers regarding Farthest North for years.

84. The GSUSA National Board of Directors found that Farthest North's demonstrated continued unwillingness to abide by the terms of its Charter and its actions and failures to act:

    a. Demonstrated deficiency in respect to its resources, finances, personnel, administrators, manner of supervising the program, and effectiveness in its attempt to reach and serve all girls within its jurisdiction or otherwise, such that, in the opinion of the National Board of Directors, it appears that such council is unable adequately to develop, manage, or maintain Girl Scouting within its jurisdiction;

    b. Constituted a course of conduct that, in the opinion of the National Board of Directors, is not in the best interests of Girl Scouting;

    c. Evidenced that Farthest North has failed to comply with a policy, credential standard, or directive issued or established by or under the authority of the National Board of Directors; and

    d. Constituted a violation of the terms, conditions, and requirements of its Charter.

85. As a result, the GSUSA Board voted to provide a notice of nonissue of charter to Farthest North in accordance with the Blue Book process.

86. GSUSA provided Farthest North with a notice of reason of non-issuance. Farthest North can submit a response to the notice of reason, and GSUSA has provided a date and time on which Farthest North can meet with the National Board to discuss the notice of reason and the issues. Following the meeting, provided that Farthest North continues to refuse to comply with its obligation to utilize the common technology platform and does not correct all other deficiencies,

24

GSUSA will notify Farthest North that its Charter will expire on June 30, 2021 and a new Charter will not be issued.

87. Farthest North has indicated that it will challenge GSUSA's decision not to issue it a new Charter.

88. All conditions precedent to the maintenance of this action have been satisfied, performed or otherwise discharged.

**COUNT I**

**(DECLARATORY JUDGMENT)**

89. GSUSA incorporates by reference the foregoing paragraphs above, as though fully set forth herein.

90. A current dispute with sufficient immediacy and reality exists between the parties concerning their obligations under the 2021 Charter and documents incorporated by reference therein and the Blue Book.

91. GSUSA has provided Farthest North with the requisite notice of reason of non-issuance of its Charter based on Farthest North's continued violations of the terms, conditions, and requirements of its Charter and the Blue Book, its deficiencies with respect to its manner of operating the program, its course of conduct not in the best interest of Girl Scouting, and its failure to comply with the policies, standards, and directives of the GSUSA Board. Once Farthest North's Charter lapses, it will no longer be permitted to identify itself with the Girl Scout Movement and GSUSA, use the words "Girl Scouts" as part of the designation of the council, use Girl Scout program material and insignia, use the Girl Scout trademarks, or conduct any fundraising in association with the Girl Scouts or GSUSA.

92. Farthest North continues to refuse to implement the common technology platform or fulfill its other Charter obligations and has indicated that it will object to any non-issuance of its Charter.

93. Accordingly, GSUSA seeks a declaration by this Court to settle the legal issues, fully and finally resolve the controversy, and help avoid the accrual of potential damages and additional litigation.

## PRAYER FOR RELIEF

WHEREFORE, GSUSA prays that, upon a final determination by this Court, judgment be entered in its favor as follows on Count I of its Complaint:

A. A declaration that (1) Farthest North has breached its obligations as a local council under its Charter and the Blue Book by refusing to utilize GSUSA's common technology platform, engaging in conduct not in the best interest of Girl Scouting, refusing to comply with policies, credential standards, and directives issued by GSUSA, and/or refusing to comply with the Viability Review corrective action plan; (2) GSUSA has the right not to issue a Charter to Farthest North and Farthest North's challenges thereto are without merit; and (3) upon the expiration of its current Charter, Farthest North will no longer be a chartered Girl Scout council and must cease identifying itself with the Girl Scout Movement, including by ceasing to use the words "Girl Scouts" as part of the designation of the council, ceasing to use Girl Scout program material, insignia, or Girl Scout trademarks, and ceasing fundraising in association with the Girl Scouts or GSUSA; and

B. An order granting GSUSA such other and further relief as the Court deems just and appropriate.

26

Respectfully submitted,

Dated:     April 20, 2021        /s/ J. Douglas Baldridge

VENABLE LLP
J. Douglas Baldridge
Benjamin E. Horowitz *(pro hac vice motion forthcoming)*
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: 202-344-4000
Fax: 202-344-8300
JBaldridge@venable.com
behorowitz@Venable.com

Maria R. Sinatra
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel.: 212-307-5500
Fax: 212-307-5598
mrsinatra@venable.com

*Attorneys for Girl Scouts of the USA*

27